UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CINDER BLOCK, INC.<br>a California corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN DOES 1-100, individuals,<br>JANE DOES 1-100, individuals,<br>and XYZ COMPANY, business<br>entity form unknown, inclusive,<br><br>Defendants. | CIVIL ACTION NO.<br><br>  ) ) ) RWZ |

### DECLARATION OF JEFFREY BISCHOFF

I, JEFF BISCHOFF, hereby declare as follows:

1. I make this declaration in support of Cinder Block, Inc.'s ("CBI") ex-parte application for: a temporary restraining order; seizure order; and a preliminary injunction to issue and thereafter a national seizure order in the above referenced matter.

2. I have personal knowledge of the facts set forth herein and am authorized by CBI to make this declaration. If called as a witness, I could and would be able to testify competently to such facts.

3. CBI is engaged in the business of manufacturing, distributing and selling authorized merchandise such as T-shirts, jerseys, sweatshirts, posters, among other goods bearing the names, likenesses and copyrights owned by popular musical groups and performers (collectively "Tour Merchandise").

4. CBI has obtained the exclusive rights to distribute Tour Merchandise at all concerts on the current North American concert tour (the "Tour") of the performing group "GREEN DAY" (the "Artist"). CBI has expended considerable resources in obtaining the exclusive rights to distribute the Tour Merchandise of the Artist.

5. I am responsible for the merchandising and security on the Tour. A copy of the Artist's current tour itinerary is attached as Exhibit "A" and is incorporated by this reference as though fully set forth herein.

6. I am the founder and President of Plaintiff CBI. I have been President of CBI for approximately 16 years. One of my primary responsibilities at CBI is to oversee the merchandising and security on popular music tours.

7. "GREEN DAY" is the tradename of this prominent and successful musical performing group, in commercial use for over 15 years. The group has released over 6 albums which have sold over 20 million units. The group's well known albums include "Dookie" which has sold over 10 million units, "Insomniac" which has sold over 2 million units, "Nimrod" which has sold over 3 million units and the recently released, "American Idiot," which has sold over 4 million units. The Artist's well known singles include "Time of Your Life" (which was featured in historic last episode of the long running television series, Seinfeld, as well as ER), "When I come Around," "Basket Case," "Longview" and "American Idiot." The Artist has been nominated for and has won numerous awards. The Artist has won two "Grammy" awards from the National Academy of Recording Arts and Sciences (in 1995 for Best Alternative Music Performance and in 2005 for Best Rock Album), and the 2005 Kid's Choice Award for Favorite Music Group. The Artist has also been nominated for over 20 MTV Music

Video awards and have won several. The Artist's performances have been broadcast on MTV, VH1 and other cable and network programs broadcast nationwide. The Artist has appeared on television programs broadcast nationwide including Saturday Night Live. The Artist recently appeared at the historic Live 8 concert which was broadcast throughout the world and on the AOL internet. The Artist has also appeared in numerous magazines distributed nationwide, including the cover of Rolling Stone, as well as in Time Magazine and the Wall Street Journal.

8. The Artist has obtained Federal Trademark Registrations for its GREEN DAY trademark, Federal Registration Number 2010113 for use in connection with International Class ("IC"): 25, for clothing, namely, shirts, T-shirts, sweatshirts, baseball jerseys, and hats; IC 9 for paper products, namely for posters, stickers, and decals; IC 20 for non-metal key chains; and IC 026, for ornamental novelty buttons, Federal Registration Number 1900456 for use in connection with IC 9, for a series of musical sound recordings, Federal Registration Number 1899279 for use in connection with entertainment service, namely live performances by a musical band. The trademarks 1900456 and 1899279 were registered in 1995 and have become incontestable.

9. This tour is highly anticipated and well publicized tour. Accordingly, many concert dates are sold out. Because of the Artist's status among popular music enthusiasts, the tour is expected to be a very successful and CBI anticipates that other dates will be added to the current Tour itinerary. The Tour involves many large-capacity venues, i.e., arenas seating in excess of 15,000 people. Income from the sales of Tour Merchandise is expected to be very substantial.

10. The group derives income and promotes their images in part from sales of recordings and live performances, and in part through the sale of merchandise associated with them. The Artist and CBI spend a great deal of care, time and money in developing the merchandise associated with the concert tours. Care is taken that the Tour Merchandise and other items bearing the Artist's marks or likenesses are of a high quality and are appropriate to the group's images.

11. Tours by the Artist, and other artists of the group's stature, have recurring problems with individuals who sell unauthorized Tour Merchandise near, at and sometime inside a concert venue. These individuals are referred to as "bootleggers," who are the "Defendants" in this action. Their activities are known as "Bootlegging" and their goods are referred to as "Bootleg Merchandise" or "Unauthorized Merchandise." On every major prior tour by the Artist and other artists of their caliber, Defendants have appeared selling their unlawful goods. In order to combat this on previous tours and on tours by other artists, merchandisers have obtained temporary restraining and seizure orders, and thereafter preliminary injunction and nationwide seizure orders to seize the unauthorized goods from the Defendants, including for this Artist. See Certificate of Counsel of Cara R. Burns, filled concurrently herewith.

13. In my experience, the Bootlegging problem has grown with the popularity of popular music tours. In virtually every instance, the Defendants sell identical shirts, indicating that they are supplied from a common source. Individual Defendants are recognized from venue to venue as they follow the tours.

14. My staff and I have followed a substantial amount of tours of various artists and frequently observe the same individuals selling Unauthorized Merchandise at

many of the venues for each artist. Organized Defendants generally follow a tour themselves or arrange to have local individuals sell the Unauthorized Merchandise for them. On the past few tours, I have seen a few, similar designs being sold by the Defendants throughout the tour.

15.  In the present circumstances, given the Artist's popularity, it is not difficult to understand the motives of the Defendants. All of the concerts on this Tour are expected to be sold out or nearly sold out. The Artist will perform before hundreds of thousands of people by the end of the Tour. The fans attending the various concerts frequently seek to purchase a souvenir, such as a T-shirt. Defendants are typically located outside the concert venues and therefore have the first and last opportunity to make these sales. Further some Defendants sell their Unauthorized Merchandise inside the venues.

16.  When members of my staff inform the Defendants that they are selling Unauthorized Merchandise, they usually just walk away and/or continue to sell the Unauthorized Merchandise. The Defendants do not respond when asked for their names or give false names and they refuse to produce identification. All Defendants ignore our requests to stop selling unauthorized merchandise. The Defendants respond that they want to see my "injunction" or "order" or else they will not stop their unlawful activities. From the nature and context of their statements, it is obvious that the "order" or "injunction" they refer to is a search, seizure and impoundment order that we seek from this court.

17.  Based on my experience, these Defendants will appear at most every performance set forth in Exhibit A to sell Unauthorized Merchandise, unless this

Honorable Court grants to CBI the order it seeks. Defendants will appear and sell Unauthorized Merchandise – this is an absolute certainty based on the fact that the Artist is one of the world's most popular groups and bootleggers have appeared on every prior tour. Further my experience has shown that bootleggers will always appear at the first performance of an artist of the stature of this Artist. Although the court could require that we wait a few weeks to try to obtain the names of the bootleggers, such would be futile since they do not provide their names and the harm is done the night of the first show and every night thereafter.

18. There appears to be a pattern to Defendant's Unauthorized Merchandise; each sell one of a few designs with the trademarks, service marks, trade names, likenesses, images or tour logos of the Artist. Further, some of these designs have all of the Tour dates on them, based on my experience, this indicates that the Defendants will continue to go from venue to venue and sell their Unauthorized Merchandise.

19. Bootlegging activities greatly injure musical performing artists, including the Artist, and legitimate merchandisers, including CBI, in two ways. First, Defendants are not bound by contract to provide first-quality apparel and graphic designs, as is required of CBI. Second, the Defendants can drastically undersell legitimate merchandiser (like CBI), because unlike CBI, Defendants have no obligation to pay the Artist royalties and do not have to pay any part of their gross sales receipts to the concert venue. This ability to undersell the legitimate Tour Merchandise is also enhanced by the fact that Defendants do not collect or pay sales or income taxes.

20. The consumer, the fans of the Artist also suffer. Unauthorized Merchandise is an inferior imitation which rarely lasts very long. The quality of the T-

shirts and the designs are poor; many T-shirts appear to be seconds and the colors on the designs tend to "run" or "bleed" into each other. The fans are disappointed and, in their confusion as to the source of the Unauthorized Merchandise, blame the artists. This affects future legitimate sales and also tends to create a negative feeling by the fans directed against the artists, which may in turn cause decreased record sales and concert attendance.

21. Defendants' Unauthorized Merchandise is intended and will cause the general public to believe that their Unauthorized Merchandise is authorized, approved and sponsored by the Artist. Consequently, not only does the sale of this Unauthorized Merchandise violate the CBI's exclusive rights, but also causes the general public to be adversely affected and irreparably harms CBI's and the Artist's reputations for excellence and integrity in the legitimate Tour Merchandise.

22. The unchallenged presence of Defendants in our marketplace destroys the market and damages CBI's business at every level. CBI's business includes making authorized Tour Merchandise available throughout the United States on the Artist's Tour.

23. The precise damage to CBI is incalculable. The Unauthorized Merchandise sells for approximately half the price (or less) of the genuine Tour Merchandise and the people involved in the illegal merchandising activities keep no records. On the basis of my past experience, I believe these Defendants would dispose of or destroy any Unauthorized Merchandise or related documents should legal proceedings be commenced against them.

///

24. The incalculable damage caused by the Defendants severely diminishes our ability to make these products available, to say nothing of depriving the rightful owners of their share of the money. CBI must therefore do everything it can to curtail the Bootlegging activities of the Defendants and this is why we are seeking the assistance of this Honorable Court to obtain an order allowing the seizure of Unauthorized Merchandise.

25. I believe the difficulties in identifying the Defendants, the fact that they have no fixed place of business and no assignable assets, make them virtually immune to normal process or to any process except by way of restraining order against persons unknown and allowing the seizure of the Unauthorized Merchandise pending a final disposition by this Honorable Court.

26. CBI is a substantial and successful business and will safely be able to hereby undertake to meet any order made to compensate the Defendants or any of them for any damages suffered by them as a result of any order obtained on our behalf. However, in my experience, no Defendant has ever appeared at an order to show cause hearing or sought relief in the countless number of nationwide search, seizure and impoundment orders.

27. In short absent significant protection from the courts, the Defendants have an insurmountable advantage over the artists and legitimate merchandisers who obtain the right to use performers' names, likenesses and related rights. Left unprotected, merchandisers will be unable to offer performers appropriate sums for these rights, pertaining to artists' names and likenesses, and related tour logos. This in turn limits the performers, ability to stage unique and exciting concerts for their fans and can, in some

instances, prevent an artist from touring altogether. The injury affects the artist, the exclusive licensee (CBI), and the fans.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed August __, 2005.

_____
JEFFREY BISCHOFF

# GREEN DAY

| Day | Date | City | Venue |
|---|---|---|---|
| Sat | 09/03/05 | Foxboro, MA | Gillette Stadium |
| Sun | 09/04/05 | Montreal, QC | Parc Jean-Drapeau |
| Mon | 09/05/05 | Ottawa, ON | Corel Centre |
| Wed | 09/07/05 | Philadelphia, PA | Wachovia Center |
| Fri | 09/09/05 | Hartford, CT | Hartford Civic Center |
| Sun | 09/11/05 | Auburn Hills, MI | Palace Of Auburn Hills |
| Mon | 09/12/05 | Indianapolis, IN | Conseco Fieldhouse |
| Wed | 09/14/05 | Moline, IL | Mark Of The Quad Cities |
| Fri | 09/16/05 | Saint Paul, MN | Xcel Energy Center |
| Sat | 09/17/05 | Des Moines, IA | Wells Fargo Arena |
| Mon | 09/19/05 | Denver, CO | Pepsi Center |
| Wed | 09/21/05 | Salt Lake City, UT | Delta Center |
| Sat | 09/24/05 | San Francisco, CA | SBC Park |
| Mon | 09/26/05 | Tacoma, WA | Tacoma Dome |
|  |  |  | Canada Not Applicable |
| Wed | 09/28/05 | Portland, OR | Memorial Coliseum |
| Fri | 09/30/05 | Sacramento, CA | ARCO Arena |
| Sat | 10/01/05 | Fresno, CA | Save Mart Center |
| Sun | 10/02/05 | Chula Vista, CA | Coors Amphitheatre |
| Tue | 10/04/05 | Albuquerque, NM | Journal Pavilion |
| Wed | 10/05/05 | Phoenix, AZ | America West Arena |
| Thu | 10/06/05 | Las Vegas, NV | Thomas & Mack Center |
| Sat | 10/08/05 | Carson, CA | Home Depot Center |
| Sun | 10/09/05 | Carson, CA | Home Depot Center |