UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CINDER BLOCK, INC. a California corporation, ) ) ) Plaintiff, ) ) vs. ) ) JOHN DOES 1-100, individuals, ) JANE DOES 1-100, individuals, ) and XYZ COMPANY, business ) entity form unknown, inclusive, ) ) Defendants. ) ) | 05   1 1 6 4 1 RWZ  CIVIL ACTION NO. |

F.R.C.P. RULE 65 CERTIFICATE OF COUNSEL

DECLARATION OF CARA R. BURNS

I, CARA R. BURNS, hereby certify as follows:

1. I am a member of the firm of Hicks Mims & Kaplan, attorneys for plaintiff Cinder Block, Inc. ("Plaintiff") in the above captioned action. I am admitted to practice before this Court and before the United States District Courts for the Southern, Eastern and Northern Districts of California, the United States District Court for the Southern District of Texas, the United States District Court for the District of Colorado, the United States District Court for the District of Arizona, the United States District Court for the Eastern District of Michigan, the United States District Court for the District of Hawaii, and the United States of Court of Appeals for the Ninth and Fifth Circuits. I represented Plaintiff on a nationwide basis, the unlawful activities by

1

Bootleggers that violate my client's contractual and legal rights. I have personal knowledge of the facts set forth herein. If called as a witness, I could and would be able to testify competently to such facts.

2. I make this certificate in support of Plaintiff's ex parte application for: a temporary restraining order; seizure order; and an order to show cause regarding why a preliminary injunction should not issue, and thereafter a national seizure order, prohibiting the sale of unauthorized merchandise bearing the trademarks, servicemarks, trade names, likeness or logos of the musical performing group known as "GREEN DAY" (the "Artist").

3. Rule 65(b)(2) of the Federal Rules of Civil Procedure requires that for the Court to grant such an order without notice, "the applicant's attorney [must certify] to the court . . . the reasons supporting [her] claim that notice should not be required." Matter of Vuitton et Fils S.A., 606 F.2d 1, 3 (2d Cir. 1979). See also Local Rule 7-19.

4. I have concentrated a substantial portion of my practice in the area of anti-counterfeiting matters for clients such as the Plaintiff and for Signatures Network, F.E.A., Inc and Giant Merchandising (other tour merchandisers), Impact Tours, Inc. (a tour concessionaire), Motorola, Inc., Alfred Dunhill, Ltd., Warner Bros., Inc., Mattel, Inc., Novell, Inc., the United States Olympic Committee, and the Software Publishers' Association. Articles regarding my representation of rights holders and the use of nationwide orders have appeared in the Detroit Free Press and The Rocky Mountain News. See Exhibit A hereto. I have filed and performed numerous ex parte search seizure and impoundment orders. In addition, I have written for the International Anti-Counterfeiting Coalition and attended their annual meeting. I have a published order

granting an ex parte search, seizure and impoundment order and a temporary restraining order. Lotus Development Corporation, et al. v. National Business Academy, et al., CCH Computer Law, Volume 2, ¶ 46,304.

5.  As set forth more fully in the Declaration of Jeffrey Bischoff and the complaint, both filed concurrently herewith, Plaintiff has the exclusive right to sell merchandise at current tour venues bearing the trademarks, servicemarks, likeness and logos of the Artist ("Tour Merchandise"). This tour, and tours by other artists of the Artist's stature, have recurring problems with individuals who sell unauthorized Tour Merchandise near, at and sometime inside a concert venue. These individuals are commonly referred to as "Bootleggers," their activities are known as "Bootlegging" and their goods are referred to as "Bootleg Merchandise" or "Unauthorized Merchandise."

6.  Plaintiff seeks the issuance of an immediate temporary restraining order and order of seizure prohibiting the unauthorized sales of the Bootleg Merchandise and permitting the seizure of such merchandise at or near the venues of the Artist's concert performances similar to the ones previously granted by numerous other Courts.

7.  I have obtained for Plaintiff and other merchandisers temporary restraining orders and seizure orders and thereon a nationwide seizure orders this Circuit and from other District Courts to combat the piratical activities of Bootleggers.

An order given to the Artist's previous tour. <u>Brockum Company v. Does</u>, Case No. 94-7374 WJR (CD CA 1994) (Judge Rea) (for Green Day's 1994-1995 tour). True and correct copies of this nationwide preliminary injunction/seizure orders is attached hereto as Exhibit B.

Orders from this District include: Signatures Network, Inc. v. Does, et al., Case No. 05 11478 RWZ (D. MA 2005) (Judge R. Zobel) (for the Ozzfest tour); Signatures Network, Inc. v. Does, et al., Case No. 05 10964 RWZ (D. MA 2005) (Judge R. Zobel) (for the group Coldplay's tour); Signatures Network, Inc. v. Does, et al., Case No. 05 10628 RWZ (D. MA 2005) (Judge R. Zobel) (for the group Maroon 5's tour); Giant Merchandising v. Does, et al., Case No. 04 CV 11223 (D. MA 2004) (Judge R. Zobel) (for the group No Doubt's tour); Cousins Entertainment v. Does, et al., Case No. 03 CV 11205 (D. MA 2003) (Judge R. Zobel) (for the artists Jay Z's and 50 Cent's tour); Giant Merchandising v. Does, et al., Case No. 03 CV 11218 RWZ (D. MA 2003) (Judge R. Zobel) (for the group Metallica's tour); Giant Merchandising v. Does, et al., Case No. 02 CV 10191 RWZ (D. MA 2002) (Judge R. Zobel) (for the artist Mary J. Blige's tour); Signatures Network, Inc. v. Does, et al., Case No. 02-10111 RWZ (D. MA 2002) (Judge R. Zobel) (for the artists Billy Joel's and Elton John's tour); Signatures Network, Inc. v. Does, et al., Case No. 02-11339 RWZ (D. MA 2002) (Judge R. Zobel) (for the group Lynyrd Skynyrd's tour); Signatures Network, Inc. v. Does, et al., Case No. 02-11396 RWZ (D. MA 2002) (Judge R. Zobel) (for the 2002 Ozzfest Tour); Signatures Network v. Does, et al., Case No. 01-11329-RWZ (D. MA 2001) (Judge R. Zobel) (for the artist Madonna's tour); Giant Merchandising v. Does, et al., Case No. 01-10923 RCL (D.MA 2001) (Judge R. Lindsay) (for the group Aerosmith's tour); Giant Merchandising v. Does, et al., Case No. 00-10527 (D. MA 2000) (Judge Lindsay) (for the artist Brittany Spears' tour); and Sony Signatures, Inc. v. Does, et al., Case No. 98-11750 RCL (D. MA 1998) (Judge Lindsay) (for the artist Celine Dion's tour). True and correct copies of some of the

4

temporary restraining orders and thereafter nationwide preliminary injunction/seizure orders are attached hereto as Exhibit C.

From other District Courts include: Signatures Network, Inc. v. Does, Case No. 05-2196 ABC (C.D. CA 2005) (Judge Collins) (for the group U2's tour); Signatures Network, Inc. v. Hatter, Case No. 300 RAL (Judge Lazzara) (D. MD FL 2005) (for the group Motley Crew's tour); F.E.A., Inc. v. Does, Case No. 05-5010 ABC (C.D. CA 2005) (Judge Collins) (for the artist Hillary Duff's tour); Signatures Network, Inc. v. Does, Case No. CV-S-05-0884 LDG (D. NV 2005) (Judge L. George) (for the group Megadeth's tour); Giant Merchandising v. Does, Case No. 05-2363 ABC (C.D. CA 2005) (Judge Collins) (for the artist Jimmy Buffett's tour); F.E.A., Inc. v. Does, Case No. 05-5010 ABC (C.D. CA 2005) (Judge Collins) (for the Artist Hilary Duff's tour); Cousins Entertainment, Inc. v. Does, et. al., Case No. 05 -K- 1290 JLK (D. CO 2005) (Senior Judge Kane) (for the artists Eminem's and 50 Cent's Anger Management tour); Giant Merchandising v. Does, et. al., Case No. 03 -K- 0700 (D. CO 2003) (Senior Judge Kane)(for the artist Jimmy Buffett's tour); Signatures Network, Inc. v. Does, Case No. CV 03-3725 (E.D. NY 2003) (Judge A. Spatt) (for the group Kiss' tour); Signatures Network, Inc. v. Does, Case No. 1:03 CV 01012 (D. DC 2003) (Judge F. Urbina) (for the group Fleetwood Mac); Giant Merchandising v. Does, Case No. 03-N-1948 (D. CO 2003) (Judge E. Nottingham) (for the tour Tony Hawk's Boom Boom Huck Jam); Giant Merchandising v. Does, Case No. 03-71195 (E.D. MI 2003) (Judge R. Cleland) (for the group Def Lepard's tour); Giant Merchandising v. Does, Case No., CV 0651 LMM (S.D.IN 2003) (Chief Judge L. McKinney) (for the group the Dixie Chicks's tour); Giant Merchandising v. Does, Case No. CV03-3726 (E.D. NY 2003) (Judge A. Spatt) (for the

group Aerosmith's tour); Giant Merchandising v. Does, Case No. 03-4162 ABC (C.D. CA 2003) (Judge Collins) (for the artist Justin Timberlake's tour); Bravado International Group v. Does, Case No. 03-4163 ABC (C.D. CA 2003) (Judge Collins) (for the artist Christina Aguilera's tour); Giant Merchandising v. Does, Case No. 02-2783 ABC (C.D. CA 2002) (Judge Collins) (for the artist Kid Rock's tour); Signatures Network, Inc. v. Does, 02-0741 FCD (E.D.CA 2002) (Judge Damrell) (for the group Incubus' tour); Giant Merchandising v. Does, Case No. 02-1508 CRB (N.D.CA 2002) (Judge Breyer) (for the artist Paul McCartney's tour); Signatures Network, Inc. v. Does, Case No. CV-S-02-1060 (D. NV 2002) (Judge Dawson) (for the group Bruce Springsteen and the E Street Band's tour); Cousins Entertainment, Inc. V. Does, Civ No. 02-4070 (E.D.NY 2002) (Judge R. Platt) (for the artist Eminem's tour); Giant Merchandising v. Does, Case No. 3:01 CV 37-V (D.NC 2001) (Judge R. Vorhees) (for the group the Backstreet Boys' tour); Signatures Network v. Does, Case No 1-D-0514 (D. CO 2001) (Judge Daniels) (for the artist U2's 2001-2002 tour); Giant Merchandising v. Does, Case No. 01-05959 NM (C.D. CA 2001) (Judge Manella) (for the artist Trey Anastacio's tour); Giant Merchandising v. Does, Civ S-01-1333 FCD (E.D. CA 2001) (Judge Damrell, Jr.) (for the group the Deftones' tour); World Online Merchandising, LLC v. Does, Case No. 00-1348 GEB (E.D. CA 2000) (Judge Burrell, Jr.) (for the artist Dr. Dre's and other artists' tour); Giant Merchandising v. Does, Case No. CV-S-00-0825 JBR (D. NV 2000) (Judge Rawlinson) (for the group Megadeth's tour); Giant Merchandising v. Does, Case No. A 00-CA-270 (W.D.TX [Austin] 2000) (Judge Nolan) (for the group Red Hot Chili Pepper's tour); Tim McGraw, v. Does, Case No. 3:00-0402 (Judge Trauger) (M.D. TN 2000) (for the artist Tim McGraw's tour) (obtain by other counsel); Giant Merchandising v. Does, Case No. 99-

K-1556 (D. CO 1999) (Senior Judge J. Kane) (for the group REM's tour); Giant Merchandising v. Does, Case No. CV-S-99-277 JBR (D. NV 1999) (Judge Rawlinson) (for the group Offspring's tour); Giant Merchandising v. Does, Case No. 98-2802 SC (N.D. CA 1998) (Judge Conti) (for the group Phish's 1998 tour); (Sony) Signatures v. Does, Case No. CV-S-98-01806 LDG (D. NV 1998) (Chief Judge George) (for the group Black Sabbath's tour); Sony Signatures v. Does, Case No. CV-98-0475 (E.D.NY 1998) (Chief Judge R. Platt) (for the artist Billy Joel's tour); Nice Man Merchandising v. Does, Case No. 97-202 (N.D. N.Y. 1997) (Judge L. Kahn) (for the group Live's tour); Giant Merchandising v. Does, Case No. 97-3300 MRP (C.D.CA 1997) (Judge Pfaelzer) (for the group Offspring's tour); Stone Temple Pilots v. Does, et al. Case No. 96-7693 WDK (Judge Keller) (C.D. CA 1996) (for the group Stone Temple Pilots' tour); and Giant Merchandising v. Does, Case No. 96-8759 WDK (VAPx) (Judge Keller) (C.D. CA 1996) (for the group Metallica's tour); Giant Merchandising v. Does, Case No. C 95-3182 CAL (Judge C. Legg) (N.D. CA 1995) (for the group Bush's tour); Giant Merchandising v. Does, Case No. CV-5-00592 PMP (RJJ) (D. NV 1994) (Judge Phillips Pro)(for the Lollapalooza '94 tour). Giant Merchandising v. Does, Case No. 94-1953 WHO (N.D. CA 1994) (Judge Orrick) (for the group the Eagles' tour); Giant Merchandising v. Does, et al., Case No. 94-2588 (E.D. NY 1994) (Chief Judge Platt) (for artist Jimmy Buffett's tour); and Giant Merchandising v. Does, Case No. C 93 2068 THE (N.D. CA 1993) (Chief Judge Henderson) (for the artist Jimmy Buffett's tour). and Giant Merchandising v. Does, Civil Action No. 93-2288 THE (N.D. CA 1993) (Chief Judge Henderson) (for the 1993 Lollapalooza tour). True and correct copies of some of the temporary restraining

orders and thereafter nationwide preliminary injunction/seizure orders are attached hereto as Exhibit D.

8. Although many people were served and thousands of items of Bootleg Merchandise were seized, not one defendant bootlegger has ever appeared. Notably, all of the above orders were sought at the beginning of tours by well known artists (of a caliber of the Artist in this matter). All were filed against Does only, and in all cases, defendant Does appeared and sold their Unlawful Merchandise.

9. Based upon my knowledge of these past actions and my prior experience, I believe that it is far more likely than not that the Defendants will use every effort to transfer, hide or destroy the Bootleg Merchandise if such merchandise is not subject immediately to an ex parte search, seizure and impoundment order. From my familiarity with such trademark and unfair competition actions, it has been my observation that hiding or destroying evidence and business records is usually the first action taken by a Bootlegger after the Bootlegger learns that litigation has been commenced by a trademark or similar property owner.

10. As set forth more detail in the Declaration of Jeffrey Bischoff, the Artist is a prominent and successful musical performing group. The Artist's audience span a large portion of the total concert going public. The Artist's career is firmly established and the Artist enjoys a large following by its audience. The Artist's marks are well known and have acquired secondary meaning.

11. Typically, a "core" group of bootleggers will follow a successful concert tour of an artist or of bands having the stature of the Artist. The pattern is for the same bootleggers to reappear from one venue to the next, selling identical, bogus merchandise

bearing the names of the artists and the logos of the tour. In a typical situation, prior to a concert, the peddlers appear, offering for sale unauthorized and inferior merchandise, particularly T-shirts, bearing the names and likenesses of the group or of individual artists appearing at the concert. This illegal merchandise seriously impairs sales of authentic merchandise within the arenas, particularly because most of the Bootleg Merchandise is sold prior to the concert. Thus, each of the unauthorized sales represents a lost sale to Plaintiff and lost income to the Artist.

12. The persistence and severity of the bootlegging activities experienced by such artists attests to the economic importance of tour merchandising rights in connection with artists enjoying the prominence of this Artist. Absent the relief requested, the loss of merchandising income at even a single venue could range in the tens of thousands of dollars. Equally relevant to this application for ex-parte relief, and as more fully demonstrated in the accompanying brief, the injury to the goodwill of Plaintiff and the Artist, through distribution of inferior merchandise (which would inevitably be associated with them), is clearly irreparable.

13. These cases involved concert tours of other prominent musical performing artists in which the plaintiff's applications for restraining orders and orders of seizure were granted to prevent bootlegging. In each instance in which service of process was affected upon bootlegging defendants, preliminary injunctions were issued to prohibit continued bootlegging by all identified defendants served with process and all persons acting in concert with them.

14. Like nearly all of the actions listed in the Exhibits, this action is commenced against John and Jane Doe defendants because those defendant Bootleggers

cannot positively be identified until the night of the concert (when they are actually served). Further, the tour has commenced and Bootleggers have appeared. As a general rule, individual bootleggers are well aware of the illegal nature of their activities. They conceal their presence and their intentions until immediately prior to the show. Even when apprehended, they frequently either refuse to identify themselves or provide fictitious names and addresses. And, these defendants do exist; they appear at the concerts, sell their spurious goods, then disappear. I have personally witnessed this at numerous concerts; I have identified myself as an attorney, asked for their names, and have been given no response as well as responses that I cannot write without offending the court. Often they say "yeah, show me your order" because they know about these orders and that what they do is unlawful. No defendant has ever made a formal appearance. However, I have had a few defendants contact me and although they refuse to give me their information, they ask if the Artist will show up at the hearing (which they do not) or if they can send to me designs for the Artist to look at. This is because only unauthorized goods are seized and they have no legitimate rights.

15. Clearly, there is no way of providing formal notice of this action to the defendants. Because Plaintiff holds the exclusive rights to use of the Artist's names, logos and likenesses in connection with Tour Merchandise, there is no possibility that issuance of the order sought herein could interfere with or impose a detriment to any legitimate interest of any person.

16. As demonstrated above, the limited relief afforded to performers and their licensees by the issuance of a temporary restraining order and order of seizure at a single concert site would not prevent these itinerant peddlers from following the performers'

tour and continuing to prey upon and infringe their property rights. Accordingly, a multiplicity of legal proceedings seeking the identical relief against the same defendants would be required. Invariably, the cost inherent in such redundant lawsuits is exorbitant, which plays directly into the hands of the bootleggers, since they know that the expense of bringing separate actions for each concert engagement would be prohibitive.

17. At the hearing on the order to show cause, Plaintiff expects to provide the Court with declarations indicating that service of the order, and the summons and complaint herein, has been made identifying bootlegging defendants (whose names will be provided) and others acting in active concert and participation with those defendants. Plaintiff will thereupon amend the caption of these proceedings to name all identified defendants served with process, and Plaintiff will present a preliminary injunction directed against such defendants (and all persons acting in concert with them) pursuant to Fed. R. Civ. P. 65.

18. It is clear that without the relief sought herein, Artist and the legitimate merchandiser, Plaintiff, are helpless to prevent this thriving illegal industry from preying upon unwitting fans who are interested in obtaining a souvenir of the concerts. With increasing frequency, courts have granted such relief as the only reasonable and effective manner of providing any meaningful relief to the artists and their authorized merchandisers.

19. All merchandise seized pursuant to this Court's order will be held first by Plaintiff's tour managers, who will then transmit the merchandise to me or to another authorized agent to hold until the completion of the tour, at which time the Court can direct the destruction or other disposition of such merchandise.

20. Plaintiff is prepared to proceed with a hearing immediately after the execution of the ex parte order being sought, or at such later time as is convenient to the Defendants and to the Court. Accordingly, the ex parte entry of this order, when balanced against the great hardships to Plaintiff if the evidence is lost or destroyed, is justified. In addition, as to the request for the national order, Plaintiff will waive any objection to venue should any such persons (or anyone else) wish to question the enforceability of the preliminary injunction.

21. I am aware of the decision rendered in Plant v. Does, 19 F. Supp. 2d 1316 (S.D. FL 1998). In part because of the reasons set forth in SKS Merch, LLC v. Barry, 233 F. Supp. 2d 841 (E.D. Ky 2002) and in part because of my personal knowledge, based on participating in over 75 tours, I believe the issued raised by Plant have been addressed in our application. This includes the fact that all concerts I seek injunctive relief for are bootlegged from the very first concert date. In my experience obtaining numerous similar orders, a tour with an artist of this popularity, Defendant Bootleggers will appear at every stop, including especially the first one. I also note that the court in Plant was unhappy that counsel filed his matter a day before the concert which "creat[ed] an artificial air of emergency" and it should have filed it as a regular motion. Counsel in that matter, who I am informed "borrowed liberally" from pleadings that I had previously filed in other matters and may not have been as well versed in this area, did not remind the court that the Lanham Act contemplates that these matters are to be brought on an ex parte (i.e. not a formal motion) basis. Moreover, if we were to wait for a formal motion to be heard and for bootleggers to appear, Plaintiff would have had to file at the location where the Artist will be performing approximately one month from now, thereby loosing

goodwill and revenue, while the bootleggers continue to infringe the Artist's/Plaintiff's right. This was not contemplated by the Lanham Act provisions.

22. Plaintiff has followed the procedures of the Anti Counterfeiting Act and has notified the United States Attorney for this District by letter of its intention to bring this action, and of the nature of this action. The United States attorney has not responded to this letter. In addition, Plaintiff has not publicized this action.

I declare under penalty of perjury under the laws of the United States and the State of Massachusetts that the foregoing is true and correct.

Executed this 5th day of August, 2005 at Los Angeles, California.

CARA R. BURNS